Filed 3/3/21  In re A.T. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.T., a Person Coming Under the Juvenile Court Law. | H047667 (Santa Clara County Super. Ct. No. JV42470) |
| THE PEOPLE, Plaintiff and Respondent, v. A.T., Defendant and Appellant. | |

After a contested jurisdictional hearing, the juvenile court sustained multiple allegations against the minor A.T.  At the dispositional hearing, the juvenile court ordered the minor confined to a ranch program for six to eight months and set the maximum period of confinement at 11 years four months.

A.T. raises two claims on appeal.  First, as to two charges that are "wobblers," he contends the trial court failed to properly exercise its discretion to designate them as felonies or misdemeanors under *In re Manzy W.* (1997) 14 Cal.4th 1199, 1204 (*Manzy W.*).  We conclude this claim is without merit.

Second, A.T. contends the trial court erroneously determined the maximum period of confinement because the terms for two charges would have been stayed under Penal Code section 654 if an adult were sentenced for the same offenses.  The Attorney General concedes this claim, and we accept the concession.  Accordingly, we will reverse the

judgment and remand for the sole purpose of determining the maximum period of confinement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The prosecution filed multiple wardship petitions against A.T. starting in 2017. A.T. does not challenge any aspect of the earlier petitions on appeal; the procedural details and facts of those earlier petitions are immaterial to this opinion.

A.T. only raises claims in connection with Petition C filed in 2019 alleging nine counts: Count 1—assault by means of force likely to produce great bodily injury (Pen. Code § 245, subd. (a)(4))[1]; count 2—attempted carjacking (§ 215, subd. (a)); count 3—second degree robbery (§ 212.5, subd. (c)); count 4—taking or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a)); count 5—hit and run driving causing property damage (Veh. Code, § 20002, subd. (a)); count 6—first degree burglary (§ 460, subd. (a)); count 7—attempted first degree burglary (§§ 460, subd. (a), 664); count 8—possession of burglar tools (§ 466); and count 9—second degree burglary (§ 460, subd. (b)).

After a contested jurisdictional hearing, the juvenile court sustained the petition on all counts. At the dispositional hearing, the court committed A.T. to the Enhanced Ranch Program for six to eight months. The court designated all counts as felonies except for count 5 (misdemeanor hit and run) and count 8 (possession of burglar tools). The court calculated the maximum time as 11 years four months.

### B. Facts of the Offenses

#### 1. Counts 1 through 3

On June 13, 2019, Benjamin Ruiz Lopez was walking to his car when he saw A.T. and another person walking on the street in a nearby intersection. A.T.'s companion

---

[1] Subsequent undesignated statutory references are to the Penal Code.

demanded, "[G]ive me your fucking keys." Lopez tried to get away, but A.T. struck him from behind, knocked him down, kicked him in the face, and took his keys. Lopez started to lose consciousness and suffered injuries to his face. A.T. and his companion used the keys to get into Lopez's car and tried to start it, but Lopez had installed a kill switch so they were unable to start the car. When Lopez tried to call 911, A.T.'s companion demanded that Lopez give him his phone. At that point, a bystander intervened, and the two attackers left the scene.

### 2. Counts 4 and 5

A.T.'s mother testified she had given him the keys to her car to let him sit inside to listen to music, but she had not given him permission to drive the car. On June 12, 2019, when the car disappeared, she called the police and reported it stolen. Later that evening, A.T. crashed the car into a trailer parked on the street. A.T. tried to drive the car away, but it was too damaged to start and the airbags had deployed.

### 3. Counts 6 through 9

On the morning of June 4, 2019, Yi Chih Ma was at home when her roommate told her someone had knocked on the door. Ma saw A.T. in her backyard. He had entered through a gated fence. After she spoke to him, he left.

Shortly afterwards, Luice Chu Chin Wu heard the sound of things being thrown around in her husband's room. When she went to the room, Wu saw A.T. in the window with one leg inside. Wu activated the security alarm, left the house, and called 911.

About 40 minutes later, the police found A.T. sitting in a car he did not own. He was in possession of two shaved keys.

## II. DISCUSSION

### A. The Declaration of Two Counts as Felonies

When a juvenile is charged with an offense that would be punishable as either a felony or a misdemeanor for an adult defendant, Welfare and Institutions Code section 702 requires an explicit declaration by the juvenile court whether the offense would be a

3

felony or misdemeanor.  (*Manzy W.*, *supra*, 14 Cal.4th at p. 1204.)  Two of the offenses—count 1 (assault by means of force likely to produce great bodily injury) and count 4 (taking or unauthorized use of a vehicle)—sustained by the juvenile court, are these so-called "wobblers," meaning offenses punishable as either felonies or misdemeanors in the case of an adult defendant.

A.T. contends the matter must be remanded for resentencing because the juvenile court failed to exercise its discretion in designating those two offenses as felonies without stating they were "wobblers."  We are not persuaded.

In the minute order for the dispositional hearing, the juvenile court ordered:  "Any charges which may be considered a misdemeanor or a felony for which the court has not previously specified the level of offense are now determined to be as follows:[.]"  The order then listed each of the nine counts and designated counts 1 and 4 as felonies.  The order was hand-signed by the judge.

A.T. contends this was insufficient to satisfy *Manzy W.* because the minute order did not say the charges were "wobblers" and the juvenile court did not address the matter orally at the dispositional hearing.  The Attorney General contends the statement in the minute order was sufficient.

We agree with the Attorney General.  No remand is required when the record as a whole shows the juvenile court was aware of and exercised its discretion to determine the felony or misdemeanor nature of a "wobbler" offense.  (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)  The signed minute order expressly mentioned "[a]ny charges which may be considered a misdemeanor or a felony," obviously referring to wobblers.  The order then classified the relevant counts as felonies.  Nothing in the statute or *Manzy W.* requires the court to make that determination orally, nor that the court use the term "wobbler", as A.T. suggests.

A.T. cites several cases construing the requirements of Welfare and Institutions Code section 702 under *Manzy W.*, but none of those authorities support the claim that

the signed minute order in this case was insufficient. For example, A.T. cites *In re Eduardo D.* (2000) 81 Cal.App.4th 545 (disapproved on other grounds by *In re Jesus O.* (2007) 40 Cal.4th 859). In that case, the court of appeal remanded the matter under *Manzy W.* because the juvenile court failed to state orally whether the offense was a felony or misdemeanor, and the court did not use any language that showed an awareness of its discretion to do so. The minute order in that case simply reflected that the offense was a felony. In this case, the minute order expressly refers to "[a]ny charges which may be considered a misdemeanor or a felony," showing the court was aware of its discretion. (See also *In re Jorge Q.* (1997) 54 Cal.App.4th 223, 238 [remanding under *Manzy W.* because nothing in the record indicated the juvenile court was aware of its discretion].)

A.T. acknowledges the minute order reflects the discretion to designate a wobbler as either a misdemeanor or a felony, but he contends the minute order is inadequate in the absence of an oral statement. We disagree. "The key issue is whether *the record as a whole* establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209, italics added.) The minute order is part of "the record as a whole," and nothing in *Manzy W.* or the Welfare and Institutions Code implies that only an oral statement is sufficient.

Accordingly, we conclude this claim is without merit.

### B. Designation of Maximum Term of Confinement Under Section 654

At the dispositional hearing, the juvenile court ordered A.T. confined to the Enhanced Ranch Program for a period of six to eight months. The probation officer then informed the juvenile court the maximum term of physical confinement was 11 years four months, and the court acknowledged this calculation. Consistent with this, the minute order states, "Advised max time: 11 years, 4 months."

It is unclear how the probation officer or the court reached that calculation, but A.T. argues it was erroneous. He contends the maximum period of confinement must

5

reflect a stay of two of the terms for counts 1 through 3 under section 654 because the charges arose out of a single course of conduct with a single objective—the intent to take the victim's car. The Attorney General concedes this claim, and for the reasons below, we find the concession well-taken.

**1. *Legal Principles***

When a juvenile court imposes a period of physical confinement on a minor, the maximum period of physical confinement must not exceed the maximum period that could be imposed on an adult convicted of the same offenses. (Welf. & Inst. Code, § 731.)[2] Section 654, subdivision (a) provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) "[I]f a defendant commits two crimes, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed." (*People v. Deloza* (1998) 18 Cal.4th 585, 594 (*Deloza*).)

"Whether the facts and circumstances reveal a single intent and objective within the meaning of Penal Code section 654 is generally a factual matter; the dimension and

---

[2] Effective September 30, 2020, the maximum term for a given offense is the *middle* term that could be imposed on an adult convicted of the same offense. (Welf. & Inst. Code, § 731, subd. (c).) The parties do not address whether this revision applies here, but the issue does not affect our analysis.

meaning of section 654 is a legal question." (*People v. Guzman* (1996) 45 Cal.App.4th 1023, 1028.)  We apply the substantial evidence standard of review to a trial court's implied finding that a defendant harbored a separate intent and objective for each offense. (*People v. Braz* (1997) 57 Cal.App.4th 1, 10; *People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

### 3.  *Section 654 Would Require a Stay of Two Terms*

The parties agree the charges in count 1 (assault), count 2 (attempted carjacking), and count 3 (robbery) arose from an indivisible course of conduct with a single objective. We agree this is the only possible finding supported by substantial evidence.  The testimony showed A.T. and his companion approached the victim, attacked him, and took his car keys in a brief, continuous course of conduct as part of a failed attempt to take the victim's car.

The record does not disclose how the probation officer or the juvenile court calculated a maximum period of confinement of 11 years four months, but the parties contend this calculation is inconsistent with the requirements of section 654.  We agree. The court could not have reached that term of confinement unless it assumed consecutive terms could be imposed on counts 1, 2, and 3.  Under section 654, the court should have assumed that if an adult were sentenced for the same offenses, two of the three terms would have been imposed but stayed.  (*Deloza*, *supra*, 18 Cal.4th at p. 594.)

Accordingly, we will remand with orders to restate the maximum period of confinement.

## II. DISPOSITION

The judgment of the juvenile court is reversed and the matter is remanded for the sole purpose of determining the maximum period of confinement consistent with this opinion.  The court shall reinstate all other orders in the judgment.

_____

Greenwood, P.J.

WE CONCUR:

_____

Grover, J.

_____

Danner, J.

People v. A.T.
No. H047667