# IN THE SUPREME COURT OF CALIFORNIA

In re F.M.,
a Person Coming Under the Juvenile Court Law.

---

THE PEOPLE,
Plaintiff and Respondent,

v.

F.M.,
Defendant and Appellant.

S270907

Sixth Appellate District
H048693

Santa Cruz County Superior Court
19JU00191

---

May 4, 2023

Justice Liu authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Kruger, Groban, Jenkins, and Evans concurred.

---

In re F.M.

S270907


Opinion of the Court by Liu, J.


Some crimes, known as wobbler offenses, are punishable either as misdemeanors or as felonies at the discretion of the sentencing court. Welfare and Institutions Code section 702 provides that when a minor is found to have committed a wobbler offense, "the court shall declare the offense to be a misdemeanor or a felony." (Welf. & Inst. Code, § 702; all undesignated statutory references are to this code.) We explained in *In re Manzy W.* (1997) 14 Cal.4th 1199 (*Manzy W.*) that this "mandatory express declaration" requirement exists partly to "ensur[e] that the juvenile court is aware of, and actually exercises, its discretion" as to whether a juvenile's wobbler offense should be adjudicated as a misdemeanor or felony. (*Id.* at pp. 1204, 1207.) We later elaborated that the express declaration contemplated by section 702 must be made at a hearing "before or at the time of disposition." (*In re G.C.* (2020) 8 Cal.5th 1119, 1126 (*G.C.*).)

A juvenile court's choice to classify a wobbler as a misdemeanor or felony can have significant implications for the juvenile. If an offense is treated as a felony, it may constitute a serious or violent felony for purposes of the "Three Strikes" law, potentially exposing the juvenile to dramatically increased sentences if he or she reoffends. (Pen. Code, § 667.) If the juvenile court treats the offense as a misdemeanor, the conviction will not qualify as a "strike" in any future prosecution. In enacting section 702, the Legislature

manifested special concern with ensuring that juvenile courts understand the choice they are making when they decide to subject a juvenile to the consequences that may attend a felony conviction. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1207.)

In this case, the trial court did not comply with section 702's express declaration mandate. That point is undisputed. The question is whether the Court of Appeal erred in declining to remand the matter to the juvenile court. We hold that it did. A section 702 error requires remand unless the record as a whole demonstrates that the juvenile court "was aware of, and exercised its discretion" as to wobblers. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) Because the record here does not demonstrate such awareness, we reverse and remand for further proceedings.

## I.

F.M. first came within the jurisdiction of the juvenile court after he punched a classmate in 2019. The juvenile court sustained an allegation that F.M. had committed simple battery (Pen. Code, § 242) and placed him on probation (Petition A). The dispositional order for Petition A is not before us.

The following year, F.M. was again brought before the juvenile court after he and a group of gang members threatened a victim with a deadly weapon and then fled from police. A wardship petition (Petition B) alleged a number of offenses, including various forms of felony assault for the benefit of a criminal street gang. (Pen. Code, §§ 245, subd. (a)(1), (2), (4), 186.22, subds. (a), (b)(1)(A).) F.M. admitted that he had committed felony assault with force likely to produce great bodily injury (*id.*, § 245, subd. (a)(4)), that he actively participated in a criminal street gang (amended by the district

attorney to be alleged as a misdemeanor rather than as a felony) (*id.*, § 186.22, subd. (a)), and that he committed felony reckless evasion of a police officer (Veh. Code, § 2800.2, subd. (a)). The juvenile court dismissed the remaining allegations while noting in a minute order that they would be considered in the rendering of a disposition.

The Petition B allegations that F.M. admitted — assault with force likely to produce great bodily injury, active participation in a criminal street gang, and reckless evasion of a police officer — are wobbler offenses. Each may be punished by imprisonment in a state prison or by imprisonment in a county jail for less than a year. (Pen. Code, §§ 245, subd. (a)(4); 186.22, subd. (a); Veh. Code, § 2800.2; see Pen. Code, § 17, subd. (a) [defining felony and misdemeanor].) The district attorney ultimately charged the assault and reckless evasion allegations as felonies and the street gang participation allegation as a misdemeanor, and the juvenile court accepted the admission of these allegations as such. The pretrial hearing transcript does not reveal any discussion of the juvenile court's discretion to treat the offenses as felonies or as misdemeanors, though the minute order for the proceeding includes a statement that "[t]he Court has considered whether the above offense(s) should be felonies or misdemeanors." The juvenile court determined that F.M. had violated his probation and committed him to the custody of Santa Cruz County Juvenile Hall until the dispositional hearing.

While in custody, F.M. participated in an assault on another minor. The district attorney responded with another wardship petition (Petition C) alleging felony assault with force likely to produce great bodily injury, undertaken for the benefit of a criminal street gang (Pen. Code, §§ 245, subd. (a)(4), 186.22,

subd. (b)), as well as felony active participation in a criminal street gang (*id.*, § 186.22, subd. (a)). These offenses are wobblers. (*Id.*, § 17, subd. (a).) At a pretrial hearing, F.M. admitted the felony assault charge without the gang allegation, and the juvenile court dismissed the other allegations. As with the pretrial hearing for Petition B, the hearing transcript does not reveal any discussion of the court's discretion to treat the offenses as felonies or misdemeanors. And this time, the court did not include in its minute order any statement indicating that it had considered whether the offenses should be treated as felonies or as misdemeanors.

Petitions B and C were resolved at a dispositional hearing in November 2020. The juvenile court continued F.M.'s wardship and found him suitable for placement at a ranch camp. Neither the transcript nor the minute order for the dispositional hearing indicate that the juvenile court acknowledged its discretion to treat the offenses F.M. admitted as misdemeanors rather than as felonies. F.M. appealed.

On appeal, the Attorney General argued that F.M. forfeited any argument that the juvenile court had failed to comply with section 702's express declaration requirement by failing to raise the issue before the juvenile court at or before the dispositional hearing on Petitions B and C. The Attorney General relied on *G.C.* for this proposition, contending that *G.C.* established that a juvenile court's violations of section 702 constitute "forfeitable legal error" and are therefore subject to the general principle that an objection to a juvenile court's dispositional order cannot be raised for the first time on appeal. (See *G.C.*, *supra*, 8 Cal.5th at p. 1131.)

The Court of Appeal rejected this argument. In *G.C.*, the juvenile court failed to declare at the original dispositional hearing whether certain wobbler offenses were to be treated as felonies or as misdemeanors, in violation of section 702. (*G.C.*, *supra*, 8 Cal.5th at p. 1122.) But the minor did not appeal that dispositional order before the time to appeal had expired. (*Id.* at p. 1124.) The minor first raised his section 702 arguments on appeal from a subsequent dispositional order involving the potential modification of the minor's placement. (*G.C.*, at p. 1124.) We held that a minor's failure to file a timely notice of appeal deprives an appellate court of jurisdiction to consider a claim of section 702 error. (*G.C.*, at pp. 1129–1130.) The Court of Appeal found this reasoning inapplicable, as there is no question here that F.M.'s appeal from the dispositional order on Petitions B and C was timely filed. (*In re F.M.* (July 26, 2021, H048693) [nonpub. opn.].)

Turning to the merits, the Court of Appeal concluded that the juvenile court failed to comply with section 702's express declaration requirement, but that remand was unnecessary because the record established that the juvenile court "was both aware of and exercised its discretion to treat the sustained allegations as felonies." In particular, the Court of Appeal emphasized that the juvenile court noted on the record "that the assault charge 'is considered a serious violent felony' and thus 'could be counted as a strike' offense in any adult court case brought against him in the future"; that the juvenile court declined to reinstate probation for the allegation sustained in Petition A; and that the juvenile court contemplated committing F.M. to the Division of Juvenile Justice — a commitment which, at the time of the dispositional order, could only have been imposed for certain felony offenses. The court held that these

"recitations on the record" made clear that the juvenile court "elected to designate the offenses as felonies" and thus remand "would be redundant." We granted review.

## II.

Section 702 provides in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." As we explained in *Manzy W.*, the statute was enacted in 1976 as part of a substantial revision to the juvenile court law, under which minors could no longer be physically confined for a period longer than that for which they could be imprisoned had they committed the offenses as an adult. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1205, citing Stats. 1976, ch. 1071, pp. 4814–4833.) This new requirement made it necessary, where it had not been before, to determine whether wobbler offenses alleged against a juvenile are felonies or misdemeanors. Section 702's express declaration requirement facilitates that determination. (*Manzy W.*, at pp. 1205–1206.)

We said in *Manzy W.* that "the purpose of the statute is not solely administrative"; section 702 "also serves the purpose of ensuring that the juvenile court is aware of, and actually exercises its discretion" as to wobbler offenses. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1207.) This recognition comports with the general purposes of the juvenile court law: "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court" (§ 202, subd. (a)); "to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare or for the safety and

protection of the public" (*ibid.*); to facilitate "reunification of the minor with his or her family" if removal from parental custody proves necessary (*ibid.*); and "to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents" (*ibid.*). The juvenile court law "shall be liberally construed to carry out these purposes." (*Ibid.*) Against this backdrop, the Legislature that enacted section 702 is best understood as having viewed section 702's express declaration requirement as calculated to secure for those subject to the juvenile court's jurisdiction a guarantee that the court understood and exercised its discretion as to wobbler offenses with the purposes of the statutory scheme in mind. (See *Manzy W.*, at p. 1207.)

Since section 702's enactment, we have thrice remanded for further proceedings to remedy noncompliance with its express declaration requirement. The first, *In re Ricky H.* (1981) 30 Cal.3d 176 (*Ricky H.*), involved a minor alleged to have committed burglary and assault. (*Id.* at p. 180.) The assault count was a wobbler. (*Id.* at p. 191; see Pen. Code, § 245, subd. (a).) We held that the record did not "demonstrate that the court made an express finding that the assault offense was either a misdemeanor or a felony" despite the wardship petition describing the assault count as a felony, the juvenile court's setting of a felony-level maximum period of confinement, and the minutes of the dispositional hearing reciting that the minor was committed for a felony conviction. (*Ricky H.*, at p. 191.) Each of these factors was "insufficient" or "inadequate," or did not otherwise satisfy section 702's mandate. (*Ricky H.*, at p. 191.) We reasoned that the fact that a juvenile court behaves as though the offense is a felony does not show that the court made a conscious choice to treat the offense as a felony or as a

misdemeanor — precisely the choice that section 702's express declaration mandate requires juvenile courts to make. (*Ricky H.*, at pp. 191–192.)

Similarly, in *In re Kenneth H.* (1983) 33 Cal.3d 616 (*Kenneth H.*), the minor was found to have committed a wobbler offense, and the juvenile court failed to make an express declaration as to its choice to treat the offense as a felony or as a misdemeanor. (*Id.* at pp. 618–620.) The Attorney General opposed remand on the grounds "that the accusatory pleading (the petition) described the offense as a felony; that at the jurisdictional hearing the court found the allegations of the petition to be true; that the finding of truth was referred to at the dispositional hearing; and that the court would not have found the allegations of the supplemental petition true if it had not found the burglary to be a felony." (*Id.* at p. 619.) We rejected these arguments and remanded for compliance with section 702, explaining that "the crucial fact is that the court did not state at any of the hearings that it found the [offense] to be a felony." (*Kenneth H.*, at p. 620.)

*Manzy W.* came next. Again, the juvenile court imposed a felony-level term of confinement for a wobbler offense without making an express declaration that it was exercising its discretion to treat the offense as a felony rather than as a misdemeanor. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1201.) We reaffirmed *Ricky H.* and *Kenneth H.*, explaining that "neither the pleading, the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or a felony." (*Manzy W.*, at p. 1208.) To comply with section 702, the juvenile court must " 'state at any of the hearings' " that it was exercising its discretion to treat the offense as a felony.

(*Manzy W.*, at p. 1208, quoting *Kenneth H.*, *supra*, 33 Cal.3d at p. 620.)

Even as we affirmed the holdings in *Kenneth H.* and *Ricky H.* in *Manzy W.*, we also explained that remand is not " 'automatic[ally]' " required "whenever the juvenile court fails to make a formal declaration" as mandated by section 702. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) Where the record shows that "the juvenile court, despite its failure to comply with the statute, was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler," remand "would be merely redundant," and "failure to comply with the statute would amount to harmless error." (*Ibid.*) We held that the failure to comply with section 702 in Manzy's case could not be regarded as harmless under that standard. (*Manzy W.*, at p. 1210.) We emphasized that over the course of the relevant hearings, "the juvenile court did not at any time refer to its discretion to declare the offense a misdemeanor" and that neither the district attorney nor counsel for the minor ever "point[ed] out to the juvenile court that it had such discretion." (*Ibid.*) On such a record, we explained, "it would be mere speculation to conclude that the juvenile court was actually aware of its discretion in sentencing Manzy." (*Ibid.*) We reversed and remanded for compliance with section 702. (*Manzy W.*, at p. 1210.)

## III.

Before this court, the Attorney General argues that F.M. forfeited his right to challenge the juvenile court's lack of compliance with section 702 by failing to raise it before the juvenile court. The Attorney General contends that sentencing errors not raised before the trial court cannot be challenged on

appeal unless the sentence ultimately imposed was "unauthorized" as a matter of law. (See *People v. Scott* (1994) 9 Cal.4th 334, 354 (*Scott*).) On this view, where a sentencing court's error suggests only that the sentence was "imposed in a procedurally or factually flawed manner," a defendant's failure to raise the issue in the trial court forfeits the claim. (*Ibid.*)

The same argument was raised before the Court of Appeal, which rejected it. We granted review to decide the issue presented by F.M.'s petition: whether this matter should be remanded to the juvenile court in light of its failure to comply with section 702. As a result, the issue of forfeiture is not squarely before us. Nevertheless, we address it pursuant to California Rule of Court 8.516. (Cal. Rules of Court, rule 8.516(b)(2).) We conclude that F.M. has not forfeited his right to challenge the juvenile court's failure to comply with section 702.

It is true that a defendant who fails to object before the trial court to a sentence on the ground that it is being "imposed in a procedurally or factually flawed manner" generally forfeits the right to challenge such an error on appeal. (*Scott, supra*, 9 Cal.4th at p. 354; see *People v. Welch* (1993) 5 Cal.4th 228, 234 ["It is settled that failure to object and make an offer of proof at the sentencing hearing concerning alleged errors or omissions in the probation report waives the claim on appeal."].) But "neither forfeiture nor application of the forfeiture rule is automatic. [Citation.] Competing concerns may cause an appellate court to conclude that an objection has not been forfeited." (*People v. McCullough* (2013) 56 Cal.4th 589, 593.)

Such concerns are present in the context of section 702 error. Specifically, application of the forfeiture rule would

render unreviewable most claims of section 702 error on appeal because in cases where the section 702 issue *was* raised in the juvenile court, the court in all likelihood would have been apprised of its discretion and no section 702 error would arise. In *Manzy W.*, we noted that neither "the prosecution [n]or Manzy's counsel point[ed] out to the juvenile court that it had such discretion" as one reason why we could not be certain that the section 702 error was harmless. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1210.) We remanded the case for compliance with section 702's express declaration requirement. (*Manzy W.*, at pp. 1210–1211.) While we did not have any forfeiture argument before us, we treated the fact that no party raised a section 702 error in the juvenile court as a factor suggesting that a remand was appropriate. (*Manzy W.*, at pp. 1210–1211.) It would have made little sense for *Manzy W.* to rely on that fact if a section 702 error not raised in the juvenile court were forfeited on appeal.

The Attorney General relies on *G.C.* for the proposition that a juvenile court's failure to comply with section 702 is "forfeitable legal error." (*G.C.*, *supra*, 8 Cal.5th at p. 1131.) But the Attorney General overreads *G.C.* in arguing that the phrase "forfeitable legal error" supports a finding of forfeiture here. *G.C.* held that the trial court lacked jurisdiction to consider any section 702 error after the time within which to file an appeal from the dispositional order had expired. (*G.C.*, at pp. 1129–1130.) G.C. argued that we could nonetheless reach the section 702 error because it rendered his sentence unauthorized as a matter of law and therefore correctable "at any time." (*G.C.*, at p. 1130.) We rejected this argument on the ground that the alleged section 702 error went to the manner in which the sentence was entered, not to the lawfulness of imposing it.

(*G.C.*, at p. 1131.) But we did not say that claims of section 702 error are forfeited when the juvenile does not raise them in the juvenile court. Rather, we used the phrase "forfeitable legal error" to contrast section 702 errors with errors that fall within the "narrow" class of errors that are correctable at any time. (*G.C.*, at pp. 1131, 1130.)

We have no occasion here to elucidate the full extent of what "forfeitable legal error" in the section 702 context might encompass. We note only that a natural reading of *G.C.*'s use of the word "forfeitable" is that a defendant who fails to file a timely appeal of a dispositional order has forfeited any right to challenge a section 702 error made in the rendering of that disposition. *G.C.* does not support the Attorney General's forfeiture argument here; in fact, we said that "upon timely appeal the proper course would have been to remand the case for the [juvenile] court to exercise its [section 702] discretion" (*G.C.*, *supra*, 8 Cal.5th at p. 1131) without any mention of whether the section 702 claim had to have been raised first in the juvenile court.

## IV.

Section 702 requires the juvenile court to declare on the record at a hearing "before or at the time of disposition" its choice whether to treat an alleged wobbler as a misdemeanor or as a felony. (*G.C.*, *supra*, 8 Cal.5th at p. 1126.) "[N]either the pleading, the minute order, nor the setting of a felony-level period of confinement may substitute" for the required declaration. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1208.) The juvenile court's failure to make this declaration as to each of the wobbler offenses alleged in Petitions B and C was error. (See *ante*, at pp. 2–4.)

The parties focus their arguments on whether we must remand under the standard announced in *Manzy W.*  There, we said a juvenile court's failure to comply with section 702's express declaration requirement must be corrected on remand unless the record as a whole establishes that the juvenile court "was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)  We reaffirm that standard and remand accordingly.

## A.

The Attorney General contends that while we recognized the propriety of harmless error review in *Manzy W.*, we "did not elucidate" the standard.  He asserts that we evaluate claims of section 702 error under the harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), which requires reversal only when "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836.)

The Attorney General is correct that a juvenile court's failure to comply with section 702 is not structural error.  In *Manzy W.*, we "disagree[d] with the minor that remand is, in effect, 'automatic' whenever the juvenile court fails to make a formal declaration under . . . section 702." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)  But it does not follow that *Watson* applies in this context.  Indeed, *Manzy W.* already established the relevant standard for assessing whether section 702 error is harmless:  Where the record in a case shows "that the juvenile court . . . was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler," failure to comply with section 702 "would amount to harmless error."

(*Manzy W.*, at p. 1209.)  The "key issue" under this standard is whether the juvenile court "was aware of its discretion" under section 702.  (*Manzy W.*, at p. 1209.)

The *Manzy W.* standard does not require a juvenile to show a reasonable probability of a more favorable outcome, and adopting *Watson* would be inconsistent with *Manzy W.* and subsequent Court of Appeal decisions.  In *Manzy W.*, we concluded that a section 702 error was not harmless because "[n]othing in the record establishe[d] that the juvenile court was aware of its discretion to sentence the offense as a misdemeanor rather than a felony." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1210.) We acknowledged that the juvenile court had set a felony-level term for the offense, rejecting a more lenient recommendation from the probation department, but we emphasized that the juvenile court "did not at any time refer to its discretion to declare the offense a misdemeanor." (*Ibid.*)  We further emphasized that neither "the prosecution [n]or Manzy's counsel point[ed] out to the juvenile court that it had such discretion." (*Ibid.*)  Finally, we noted that the juvenile court consistently referred to the possession offense as a felony — again, without ever acknowledging its discretion to treat the offense as a misdemeanor.  (*Ibid.*)  Stating that "it would be mere speculation to conclude that the juvenile court was actually aware of its discretion in sentencing Manzy," we remanded. (*Id.* at p. 1210; see *id.* at p. 1211.)

Nothing in this analysis suggests that Manzy had demonstrated a reasonable probability that he would have received a more lenient sentence but for the error.  Had that been relevant, we would have given weight to the juvenile court's rejection of a more lenient sentence, as the dissenting opinion in *Manzy W.* did in arguing that remand was

unwarranted. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1212 (dis. opn. of Baxter, J.).) Instead, our analysis turned entirely on whether the record showed that the juvenile court was "aware of" and "exercised" its discretion as to wobblers — precisely the discretion that section 702 was enacted to "ensur[e]" that juvenile courts would exercise. (*Manzy W.*, at pp. 1207, 1209 (maj. opn.).)

The same is true of the Court of Appeal cases that the Attorney General identifies as having been "[a]dequately guided by the rule set forth" in *Manzy W.* over the years. (See *In re Raymundo M.* (2020) 52 Cal.App.5th 78, 90–93 (*Raymundo M.*); *In re Cesar V.* (2011) 192 Cal.App.4th 989, 1000 (*Cesar V.*); *In re Ramon M.* (2009) 178 Cal.App.4th 665, 675–676 (*Ramon M.*); *In re Eduardo D.* (2000) 81 Cal.App.4th 545, 548–549 (*Eduardo D.*); *In re Jorge Q.* (1997) 54 Cal.App.4th 223, 238 (*Jorge Q.*).) Each of these cases involved a section 702 error, but none applied or cited the *Watson* standard or any other standard that examines the probability of whether a more favorable outcome would have followed had the juvenile court complied with section 702. The cases that conducted any analysis at all applied *Manzy W.*'s "aware of, and exercised its discretion" standard. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.)

In *Cesar V.* and *Eduardo D.*, the Attorney General conceded that the section 702 errors at issue compelled a remand under the rule of *Manzy W.* (*Cesar V.*, *supra*, 192 Cal.App.4th at p. 991; *Eduardo D.*, *supra*, 81 Cal.App.4th at p. 548.) *Cesar V.* accepted the Attorney General's concession without analysis and remanded. (*Cesar V.*, at pp. 1000–1001.) *Eduardo D.* analyzed whether remand was warranted under *Manzy W.*'s standard. (*Eduardo D.*, at pp. 548–549.) It explained that "the juvenile court did not orally indicate on the

record whether the crime was a felony or a misdemeanor. Nor did the juvenile court use any language that demonstrated an awareness of its discretion to make such a determination." (*Id.* at p. 549.) The court noted that "the minute order reflect[ed] that [the offense] was a felony and the minor's period of confinement was set not to exceed the felony period of three years," but explained that these facts "do not satisfy the requirements" of section 702. (*Eduardo D.*, at p. 549.) The court remanded, without any consideration of whether the record suggested that the petition might have been adjudicated differently had section 702's mandate been followed. (*Eduardo D.*, at p. 549.)

The courts in *Jorge Q.* and *Ramon M.* also remanded with similar reasoning. (*Jorge Q.*, *supra*, 54 Cal.App.4th at p. 238; *Ramon M.*, *supra*, 178 Cal.App.4th at pp. 675–676.) In *Jorge Q.*, the court reiterated that the absence of an "express oral on-the-record finding" violated section 702. (*Jorge Q.*, at p. 238.) It noted that *Manzy W.* had "settled any further controversy about whether an express finding is necessary" and remanded, explaining: "There is nothing in the record to indicate that the juvenile court was aware it had such discretion or to indicate the juvenile court had exercised its discretion." (*Jorge Q.*, at p. 238.) As in *Eduardo D.*, the court gave no indication that it considered whether the juvenile court might have adjudicated the petition differently had it complied with section 702. All that mattered was whether "[t]he record . . . demonstrate[d] the exercise of discretion," and it did not. (*Jorge Q.*, at p. 238.) In *Ramon M.*, the court remanded without reciting *Manzy W.*'s harmless error standard, but it similarly did not demand any showing that compliance with section 702 would have resulted in a different outcome. (*Ramon M.*, at pp. 675–676.)

Finally, in *Raymundo M.*, the Court of Appeal did not remand, but as the Attorney General acknowledges, it based that decision on the ground that there was no section 702 error at all, not on any analysis of *Manzy W.*'s harmless error standard. (*Raymundo M.*, *supra*, 52 Cal.App.5th at pp. 90–93.) In sum, *Manzy W.* set forth a harmless error standard that does not incorporate an assessment of whether it is "reasonably probable that a result more favorable to the [juvenile] would have been reached in the absence of the error" (*Watson*, *supra*, 46 Cal.2d at p. 836), and subsequent Court of Appeal decisions have applied *Manzy W.* with that understanding.

Moreover, section 702 error is distinct from other errors where we apply the *Watson* standard. The Attorney General analogizes this case to various cases involving the sentencing of adults, in which courts have remanded after certain sentencing errors only upon a showing that a different result might have been reached absent the error. (See *People v. Champion* (1995) 9 Cal.4th 879, 933–934 (*Champion*); *People v. Price* (1991) 1 Cal.4th 324, 492 (*Price*); *People v. Avalos* (1984) 37 Cal.3d 216, 233 (*Avalos*).) But none of those cases involved errors of the kind at issue here.

In *Champion*, we held that a trial court's failure to give reasons for imposing consecutive sentences was error under a statute that requires courts to "state the reasons for [their] sentencing choice[s]." (Pen. Code, § 1170, subd. (c); see *Champion*, *supra*, 9 Cal.4th at pp. 933–934.) In a brief passage, we held that the failure to state reasons was "harmless" and declined to remand because the record showed ten aggravating circumstances that justified imposition of consecutive sentences while showing no mitigating circumstances. (*Champion*, at p. 934.) It was "inconceivable," we said, that the trial court

17

would not have imposed consecutive sentences even if it had complied with the statutory requirement to state its reasons for doing so. (*Ibid.*)

In *Avalos*, the defendant argued that he was entitled to a remand for resentencing because the trial court improperly relied on an aggravating circumstance in sentencing him to a consecutive term. (*Avalos, supra*, 37 Cal.3d at p. 233.) We agreed that this was error but, applying *Watson*, declined to remand in light of other aggravating factors that would have justified the same sentence. (*Avalos*, at p. 233.) Similarly, the defendant in *Price* argued that three of the ten reasons relied on by the trial court in imposing an upper term were not supported by the record. (*Price, supra*, 1 Cal.4th at p. 491.) We again declined to remand, citing *Avalos* and explaining that "[w]hen a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*Price*, at p. 492, citing *Avalos*, at p. 233.)

The issues presented in *Champion*, *Avalos*, and *Price* did not have to do with whether a trial court understood the full extent of its lawful discretion and its obligation to exercise it. Although the trial courts in those cases did not make explicit the reasoning for a particular decision or relied on improper reasons for a decision, there was no suggestion that they were unaware of the decision they were tasked with making. This distinction is significant because section 702 manifests a specific legislative commitment to "ensuring that the juvenile court is aware of, and actually exercises, its discretion" as to wobblers. (*Manzy W., supra*, 14 Cal.4th at p. 1207). Applying *Watson* to assess the likelihood of a more favorable result does not address the risk of

18

courts misapprehending the extent of their lawful authority in this particular context.

Further, there is a practical difference in assessing the effect of an error when the court has not articulated whether a discretionary decision was made in the first place, as compared to when there were errors in a decision the court actually rendered. In the latter scenario, we may decline to remand because the record reflects aggravating circumstances so numerous that it would be "inconceivable" that the trial court would "impose a different sentence" absent the error. (See *Champion*, *supra*, 9 Cal.4th at p. 934.) By contrast, where the concern is that no discretionary decision was made, attempting to discern the likelihood of a "more favorable" decision is a more speculative inquiry. Instead of hypothesizing what decision the juvenile court would have made if it had understood the extent of its lawful authority, reviewing courts have consistently held that remand is appropriate in these circumstances. (*Ante*, at pp. 14–17.)

**B.**

Applying *Manzy W.*, we conclude that a remand is required on this record. The Court of Appeal justified its refusal to remand with three considerations: first, that the offenses F.M. admitted were alleged as felonies in Petitions B and C; second, that the juvenile court rejected the probation department's recommendation to return F.M. to his parents' custody and to reinstate probation, which would have been consistent with treating the offenses as misdemeanors; and third, that the juvenile court directed the probation department to consider whether to commit F.M. to the custody of the Division of Juvenile Justice or to send him to a ranch camp,

when a commitment to the Division could only have been imposed if the offense were treated as a felony. But similar considerations were presented in *Manzy W.*: The offenses at issue were alleged as felonies (*Manzy W.*, *supra*, 14 Cal.4th at p. 1202), and the juvenile court considered imposing (and in fact imposed) a sentence harsher than that recommended by the probation department (*id.* at pp. 1202–1203). Here, as in *Manzy W.*, these features of the record are not enough to show that the juvenile court was "aware of, and exercised its discretion" to treat a wobbler as a misdemeanor or as a felony. (*Id.* at p. 1209.)

The Attorney General says, "That the assault and evasion offenses were alleged as felonies and the court stated a felony-level maximum time of confinement is consistent with the court having understood its discretion to designate the wobbler offenses as misdemeanors or felonies." But it is also consistent with the opposite proposition: that the trial court did *not* understand its discretion in treating the wobblers as felonies. These aspects of the record do not demonstrate the awareness required by *Manzy W.* (See *Ricky H.*, *supra*, 30 Cal.3d at p. 191.)

The Attorney General also points to the juvenile court's statement in the minute order for Petition B that "[t]he Court has considered whether the above offense(s) should be felonies or misdemeanors." But there are no offenses listed "above" the statement, only a list of all of the allegations that F.M. was charged with at the end of the minute order. The statement could have referred to the three offenses F.M. admitted to in the hearing or to the full list of charges, which included those that were dismissed but would be considered in the rendering of a disposition. The minute order does not specify which wobbler offenses were considered, and the transcript of the proceedings does not contain any further clarification or otherwise indicate

that the juvenile court was aware of its discretion. We have said that a minute order may not "substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1208; see *Ricky H.*, *supra*, 30 Cal.3d at p. 191 [finding insufficient a minute order that "recited that the minor was committed to the Youth Authority 'for conviction of [a] felony' "].) Here too, the minute order does not show that the juvenile court was "aware of, and exercised its discretion." (*Manzy W.*, at p. 1209.)

Further, the language at issue appears only in the minute order for Petition B; it did not appear in the record of Petition C, which also involved F.M.'s admission of a wobbler offense. The juvenile court was required to separately exercise its discretion as to that offense, and the record contains insufficient indication that it did so.

F.M. urges us to go beyond *Manzy W.* to articulate with more specificity what a juvenile court must say in order to avoid a remand for a section 702 error. We decline to suggest that any particular script is necessary to satisfy section 702. The standard set forth in *Manzy W.* is well calibrated to resolving these issues: A section 702 error is not harmless unless the record shows that the juvenile court was "aware of, and exercised its discretion" as to each wobbler alleged against the minor. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) That standard was not met here.

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.


**LIU, J.**


**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re F.M.

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 7/26/21 – 6th Dist.
**Rehearing Granted**

---

**Opinion No.** S270907
**Date Filed:** May 4, 2023

---

**Court:** Superior
**County:** Santa Cruz
**Judge:** Denine J. Guy

---

**Counsel:**

Michael Reed, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit and Donna M. Provenzano, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael Reed
Attorney at Law
P.O. Box 386
Salinas, CA 93902
(831) 250-0820

Donna M. Provenzano
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3844